# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 4, 2014 Session

## STATE OF TENNESSEE v. PATRICK LEIGHTON RYAN, JR.

**Appeal from the Circuit Court for Hardeman County**
**No. 13-CR-74     J. Weber McCraw, Judge**

---

**No. W2014-00327-CCA-R3-CD  - Filed January 22, 2015**

---

The defendant, Patrick Leighton Ryan, Jr., was convicted of misdemeanor theft under $500 and sentenced to eleven months and twenty-nine days of supervised probation, with credit for time served.  On appeal, he argues that the trial court erred both by not requiring the State to make an election of offenses or giving a special jury instruction as to unanimity,  in excluding a police property inventory from 2005, and in not taking judicial notice of the Grand Junction Police Manual and that the evidence is insufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Parker O. Dixon, Memphis, Tennessee (on appeal); and C. Michael Robbins, Covington, Tennessee (at trial), for the appellant, Patrick Leighton Ryan, Jr.

Herbert H. Slatery, III, Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Formerly, the defendant was employed as a deputy sheriff in Hardeman County and, during the events resulting in these charges, as the police chief in Grand Junction, Tennessee.  The indictment alleged that he continued to exercise control over certain items valued over $1000 but less than $10,000 issued to him by the Grand Junction Police

Department or the Hardeman County Sheriff's Department.

For the convenience of readers of this opinion, we are setting out the testimony of witnesses in an order different from that at the trial.

## State's Proof

William Curtis Lane testified that he was the mayor of Grand Junction and that the defendant had been employed by the city's police department as a part-time officer during the periods from March until July 2001 and December 2005 to November 2006. The defendant then served as the police chief from December 2006 until March 2012, when he was terminated. Both the police department and the city had a policy requiring that all employees return city property at the end of their employment.

Lane said that during the time that the defendant was employed as the chief of police, he and the defendant believed that a drug dog would be of benefit, so they checked prices for the necessary equipment and purchased it from money in the drug fund. Receipts showed that the City of Grand Junction purchased a dog kennel for $200 and a dog house for $84.78.

Lane said that a burglary occurred at city hall on March 10, 2012, and law enforcement agencies were contacted. The defendant was terminated from his position, and, upon checking, no inventory sheets were found although the defendant had been responsible for keeping such records. Lane met with the defendant who told him that he still had some of the city property issued to him and agreed to have it ready to be picked up by March 12. Lane told the defendant this should include the kennel and dog house. The acting police chief went to the defendant's residence and retrieved some of the property and was told the defendant was still getting the rest of the property together. The City did not recover the kennel until these charges were brought. Lane was shown a photograph of the kennel recovered from the defendant's residence and said it appeared to be the kennel purchased by the City. He also identified a photograph of a recovered dog house with a green base as one purchased by the City.

Lane testified that Benny Jennings, a former police officer, purchased shirts from the defendant, which belonged to the city, as evidenced by "GJPD" sewn on the sleeves. Officers were required to turn in such items upon leaving employment to prevent impersonation. Lane said that pants and reflective vests, which he also identified, were of the same type as issued to officers and would have been on one of the missing inventory sheets.

The trial court took judicial notice of the city charter, setting the mayor's spending authority at $50.

Investigator Jason Wilson of the Hardeman County Sheriff's Department testified that he used a confidential informant to purchase items from the defendant. On September 19 and 27, 2012, two purchases were made, each time for $250, both at the defendant's residence. During the September 19 buy, a dog kennel, three dog houses, and a dog carrier were purchased. During the September 27 buy, Grand Junction Police Department uniform shirts, pants, rain jacket, two police vests, and a bulletproof vest were among the items purchased. At the time of his arrest, the defendant admitted the dog kennel belonged to the police department but said that some of the items belonged to him. Investigator Greg Moore, also of the Hardeman County Sheriff's Department, verified that the defendant made these statements at the time of his arrest. Chief Deputy Billy Davis of the Hardeman County Sheriff's Department testified that bulletproof vests were custom made to fit individual officers and each bore a serial number. The vests cost $450 each and were to be returned when an officer left the department. Records at the department were not well maintained, and there was no record showing that a vest had been issued to the defendant.

Benny Jennings testified that he had been employed as a Grand Junction police officer and worked for the defendant. He worked with the first drug dog and decided that it was not suitable. He later resigned from the police department and in September 2012, the defendant told him that "he had a lot of things that . . . belonged to Grand Junction" and that "he was going to have to get rid of it if they [did not] come get it." Later, he telephoned Jennings asking if he wanted to buy the kennel, and Jennings passed along this information to the mayor. From the defendant, he purchased a dog kennel, three dog houses, and a pet porter. Later, he bought from the defendant a bulletproof vest. On a subsequent occasion, the defendant sold him uniform shirts and pants, reflector vests, and various other items.

Lori Rice, the finance officer for the City of Grand Junction, testified that the replacement costs for the police uniform shirts were $35 each, the pants were $35 to $38, reflective vests were $28, and the patches for the shirts were $4.50 each, with an additional setup fee of $75.

**Defendant's Proof**

Sammy Brasher testified that he was a former Grand Junction police officer and had helped the defendant design a shoulder patch for the uniform shirt. He was offered "close to a box" of patches as compensation for this work.

Sammy Flake testified that he was employed as a deputy by the Hardeman County Sheriff's Department, under a previous sheriff, from 2002 until 2007. He said that, around 2004, he was issued a bulletproof vest, and, at the time, there had been no procedure regarding return of such vests upon leaving the employment of the department. He left the department upon being convicted of sexual battery by an authority figure. During his employment, he was a "road deputy," without supervision over others.

Robert Gilmore testified that "[s]ometime in the nineties," he and his wife gave a Doberman puppy to Pat and Brenda Ryan and had delivered the dog in a portable crate.

Richard Henry Kee testified that he was a data conversion specialist for Orgill and an alderman for the City of Grand Junction. Previously, he had served as mayor and vice mayor. He said that in 2006, when he did not hold an official position with the city, the mayor "brought up the suggestion of doing a K-9 dog for the city." He said that, in 2000, when he was mayor, the matter also had been discussed. In his opinion, Mayor Lane was "untrustworthy." The witness acknowledged that he was the nephew of the defendant.

Herman Hayes testified that he was employed by the City of Grand Junction. In 2012, he overheard the defendant telling the mayor that "he needed to come and get" the dog kennel, and the mayor said that "he could have it."

## ANALYSIS

On appeal, the defendant argues that the trial court erred by not utilizing a special jury instruction as to unanimity, by not allowing into evidence certain 2005 police property records, by not taking judicial notice of the Grand Junction Police Manual and that the evidence is insufficient to sustain his conviction. The State responds that an election of offenses was not required because the defendant's exercise of control over the government constituted a single scheme; that the evidence is sufficient to sustain the conviction; that the trial court properly excluded the 2005 police property records; and that the court properly refused to take notice of the Grand Junction Police Manual. We will review these issues.

### I. Special Jury Instruction as to Unanimity

The defendant was charged in a single-count indictment, as amended, with violating Tennessee Code Annotated section 39-14-103:

> **THE GRAND JURORS** of Hardeman County, Tennessee, duly empanelled and sworn, upon their oath, present that **PATRICK LEIGHTON RYAN JR.,** on various dates between September 1, 2012 and October 31,

2012, in Hardeman County, Tennessee, and before the finding of this indictment, did unlawfully, feloniously and knowingly exercise control over property to-wit: four chain link dog kennel panels, one dog carrier, three dog houses, one US armour ballistic vest serial no. 59996-010, two reflective police vests, one police rain coat, one leather belt with holster and accessories, one first responder bag, two tactical knee pads, one flashlight pouch, one portable blue light, seven Grand Junction Police Department uniform shirts, five Grand Junction Police Department uniform pants and one belt, a more particular description thereof being to the Grand Jurors unknown, valued at over one thousand dollars ($1,000) but less than ten thousand dollars ($10,000), of Grand Junction Police Department or Hardeman County Sheriff's Department without their effective consent, with the intent to deprive said Grand Junction Police Department or Hardeman County Sheriff's Department thereof, in violation of T.C.A. 39-14-103, against the peace and dignity of the State of Tennessee.

To supplement the jury instructions of Tennessee Pattern Jury Instruction 42.25, the defendant submitted the following special request as to unanimity:

The state has offered proof in its case in chief of more than one act of theft by exercising control over property of another with intent to deprive the owner thereof of the property without effective consent.

The state has presented evidence of events on three separate dates in the indictment. These are: September 19, September 27 and October 9, 2013 [sic].

The evidence of the state in support of the indictment is that the defendant committed specific acts constituting theft by exercise of control over property, to wit:

September 19: four chain link dog kennel panels, one dog carrier, three dog houses.

September 27: Armor ballistic vest serial no. 59996-010, two reflective police vests, one raincoat, one leather belt with holster and accessories, one first responder bag, two tactical knee pads, one flashlight pouch, one portable blue light, seven Grand Junction Police Department uniform shirts, five Grand Junction Police Department uniform pants and one belt.

-5-

The verdict you report in this case must be the considered judgment of each juror. In order to return a verdict, the law requires that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

In order for you to return a verdict of guilty, the state must have proven beyond a reasonable doubt each and every element of the offense of theft by exercise of control over property as to each and every one of the multiple specific acts involving multiple items of property which are alleged to constitute the offense of theft by exercise of control over property as detailed in this instruction and grouped on two dates, September 19 and 27, 2013, [sic] and as alleged in the indictment.

The trial court explained why this additional instruction would not be given to the jury:

The Court finds that that's not an appropriate instruction, most particularly since the Sheriff is standing in the courtroom available to both parties. Also, counsel has this morning filed some requested jury instructions. He's asked the Court to charge 43.03 concerning the defendant's election not to testify. That will be charged. Credibility of witness, 42.04 is requested to be charged and is being charged. 42.11 will be charged only with regard to admission against interest on this confession which is the alternative or additional language contained in that instruction. There's also a request that the Court amplify its instruction and charge 11.01, which is the theft of property statute. Counsel has set out in the pleading the language that he wants amplified as set out in this memorandum of understanding. It was at a late hour when counsel prepared this request. I think everyone agrees that the offense at issue occurred in 2012 and not 2013 so, noting that change, this was presented somewhat at the motion for judgment for acquittal issue. The election of offenses issue, the Court has considered it and while the Court

-6-

thinks it is an interesting question, the Court thinks that that issue has already been considered by the courts and while it understands the election of offenses with regard to sex offenses which typically is driven but the issue before the Court that's going to be presented to the jury is the exercise and control over not be (inaudible) operative, the instruction, the Court believes the jury can consider if there's exercise and control over property, which property, and then the Court will also be instructing to consider and fix the value, so that will require the deliberate effort of the jurors to determine each item as it considers the appropriate value. So the Court declines to expand or enlarge the theft of property.

We will review this ruling by the trial court.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001) (citing State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000); State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). An instruction will be considered prejudicially erroneous only if it fails to submit the legal issues fairly or misleads the jury as to the applicable law. State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005) (citing State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998)). A trial court's denial of a request for special jury instructions is error only when the trial court's charge does not fully and fairly state the applicable law. State v. Cozart, 54 S.W.3d 242, 245 (Tenn. 2001).

As we have set out, the indictment alleged that between September 1, 2012 and October 31, 2012, the defendant unlawfully exercised control over a number of items belonging to the Grand Junction Police Department or Hardeman County Sheriff's Department, valued at over $1000 but less than $10,000.

In State v. Byrd, 968 S.W.2d 290, 291 (Tenn. 1998), our supreme court considered a matter in which the defendant had been convicted on a single count of theft, after items stolen from nine separate Pigeon Forge merchants had been recovered from the trunk of her vehicle. The State charged the theft in a single count, the values totaling $2,644.92. The defendant asserted that the indictment was duplicitous and that there should have been a separate count for each merchant. The court explained that, because the defendant had exercised simultaneous possession or control over stolen property, Tennessee Code Annotated section 39-14-103 allowed the values of each to be aggregated into a single count:

In the case now before us, the defendant was in an automobile that contained in excess of $ 2,500.00 in stolen property. The evidence indicated that she had simultaneous access to or control over the property without consent. The evidence further indicated that the defendant intended to deprive the individual owners of the property. Accordingly, the prosecutor acted within his discretion and had probable cause to indict the defendant for theft over $1,000.00. See State v. Gilliam, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995) (stating district attorneys have broad discretion in determining what crime to charge). We find that the indictment was facially valid.

Byrd, 968 S.W.2d at 292.

In the present appeal, the State's proof showed that the defendant exercised simultaneous control over various items which were the property of the Grand Junction Police Department or the Hardeman County Sheriff's Department. The holding in Byrd clearly permits the aggregation of the multiple items into a single count. Accordingly, we conclude that the record and applicable case law support the trial court's denial of the special jury instruction submitted by the defendant.

## II.  Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain his conviction because, in his view, the State failed to show that any of the items in question had been stolen, and witnesses could not identify the items as having been purchased by the governmental entities, only that they were of a "similar character." We will review these claims.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v.

Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain this conviction, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly obtained or exercised control over property without the owner's effective consent and that the value of the property was $500 or less. Tenn. Code Ann. §§ 39-14-103(a), -105(1).

We will review the evidence in the light most favorable to the State.

Mayor Lane testified that the dog house obtained from the defendant in a controlled buy originally had been purchased from Walmart for $84.78. He had requested that the defendant return the dog house and kennel. After the defendant was terminated by the city,

he acknowledged to Lane that he still possessed city property, including dog houses and the dog kennel. Lane further said that the defendant had not returned the kennel. Investigator Wilson and Investigator Moore both testified that, as the defendant was being arrested, he acknowledged that while the kennel belonged to the city, some of the property belonged to him. Former Mayor Richard Kee said the defendant asked that he tell Mayor Lane to retrieve the property that was to be returned to the city. As for the Grand Junction Police Department shoulder patches, Kee testified that he did not authorize the defendant's receiving a box of the patches; and Sammy Brasher testified that the defendant had the patches in his possession.

The defendant was convicted of misdemeanor theft, meaning that the value of the property which he had illegally taken amounted to $500 or less.

Based upon the testimony, as we have set out, a reasonable jury could have determined that the defendant committed theft of items valued at $500 or less, which was the property of the Grand Junction Police Department or the Hardeman County Sheriff's Department.

### III. Police Inventory Records from 2005

The defendant argues that the trial court erred by not allowing into evidence 2005 Grand Junction police inventory documents and evidence. The State responds that the defendant failed to seek admission of these items into evidence and, additionally, that he was not prejudiced by their exclusion.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. All relevant evidence, subject to certain exceptions, is generally admissible under Rule 402 of the Tennessee Rules of Evidence. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403.

First, we will set out the background of this dispute. The defendant served a subpoena for records regarding purchases and inventories for the period from 2006 through 2012, and, on August 15, 2013, received twenty pages of documents. The day prior to the September 11, 2013 beginning of the trial of this matter, the 2005 inventory records were sent to the defendant by facsimile transmission. The records produced consisted of a list of police department property, with serial numbers, but did not show to whom the property had been assigned. After presenting his final witness, but before resting, defense counsel told the court that he had not had sufficient time to review the 2005 records and moved that they

be admitted into evidence. The State objected, saying that the records were "from two police chiefs ago." The trial court concluded that the records would not be entered into evidence:

> The Court finds that those documents were provided on September 11th as [c]ounsel has indicated that's been marked I.D., the facsimile. Also, as I understood [the prosecutor], not only were they sent by fax, there was a telephone conversation so counsel was made aware of those prior to the trial starting, although the Court recognizes it was only a short time before the trial. The trial began, there was no objection prior to the trial that those documents have been just received and they were material. There was no request for a continuance. With regard to now entering those documents, since they were available to [c]ounsel prior to trial, they could have been admitted through, apparently, the Mayor or . . . Ms. Rice, the city person who testified who provided those to [the prosecutor]. So they could have been admitted if they were so admittable through those witnesses, so they will not be permitted to be admitted now.

Tennessee Rule of Evidence 803(6), the business records exception to the hearsay rule, provides as follows:

> Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

Although, apparently, the 2005 records had come from the City of Grand Junction, the record on appeal includes no testimony from a knowledgeable witness so as to qualify the late-produced records as "business records." We note that the defendant had sought city records from 2006, and these records were dated 2005. Although the defendant argues on appeal that the late production of the 2005 records preventing his making certain arguments to the jury, we conclude that these records were of very minimal, if any, relevance to the issues at the trial. Accordingly, this claim is without merit.

## IV.  Judicial Notice of Grand Junction Police Manual

The defendant argues that the trial court erred by refusing to take judicial notice of the Grand Junction Police Manual.  The State responds that the trial court ruled correctly, because the defendant had not sought to authenticate the manual through any of the witnesses and, since the purported copy of the manual was not paginated, it was not clear that it was complete.

This issue developed from the testimony of Mayor Lane, who said that the policies of both the city and the police department required that city property be returned when an individual left city employment.  Later in his testimony, he acknowledged that the police department policies were being revised, so he could not say that the return property requirement had been in the police manual prior to the defendant's being arrested.  The defendant did not utilize in his examination of any of the witnesses what purported to be a copy of the police manual.  After both sides concluded the presentation of their witnesses, the defendant asked that the court take judicial notice of the police manual.  In particular, the defendant wanted the court to take judicial notice of "this single fact that the procedure testified to by the Mayor as to the police manual having this provision that deals with the issue on recovering property . . . .  The fact is the manual does not contain that."  The court denied the defendant's request regarding judicial notice, explaining there had been no showing that the manual in question had been in effect at the time of the offenses charged in the indictment and that the defendant should have questioned Mayor Lane about the absence of a return property requirement.

Tennessee Rule of Evidence 201 provides that a trial court may take judicial notice of a "fact [that is] not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b).

We agree with the trial court's ruling in this regard.  The defendant wanted the court to take judicial notice of the fact that the Grand Junction Police Manual did not have a requirement that property be returned when an officer left employment with the department. The best witness to this, as the trial court correctly noted, would have been Mayor Lane, who could have been cross-examined during his testimony both as to the authenticity of the manual and its contents.  We conclude that the defendant failed to make the showing required by Tennessee Rule of Evidence 201(b), and, accordingly, the record supports the ruling of the trial court.

This assignment is without merit.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.


_____
ALAN E. GLENN, JUDGE